Good afternoon, Your Honors, Judge Silverman. I'd like to reserve five minutes if I could. May it please the Court. My name is Jeffrey Kaufman. I represent the plaintiff appellant Pamela Goodman. This is a personal injury case that was removed to the District Court from State Court, and the District Court granted Staples' motion for summary judgment. This appeal concerns the propriety of the trial judge ruling upon certain liability issues in Arizona, which is a pure comparative negligence state, and as well as it considers two very important evidentiary issues that are matters of first impression in this Court. The facts briefly stated are that Ms. Goodman was shopping in a Staples store. She had never been in this store before. While shopping, she was walking close to an aisle of merchandise that was about five feet high, and she made a right turn at the end of the aisle into an area that she had never been in before. And she tripped over a shelf that was barely off the ground. The shelf was part of the shelf was recessed, so it was even inset from her line of sight, and from her approach, angle of approach, it was impossible or next to impossible for her to see until it was too late. If she had been further away, she, from the further into the aisle, she would have had a better view of the shelf. If she had been over facing the shelf, which was the angle of the photograph that the trial judge relied upon, the shelf was open and obvious. There weren't any other shelves like this in the store. The shelf was in that condition because it was part of a display that it was either in the process of being put up or taken down. After she – there were no cones or barriers or what they call shippers that would have – that could have been, and were in other places in the store, in such a position to divert her around the shelf. But if you were looking where she's walking, which I take it everyone should do, wasn't it open and obvious? No, because it was recessed. First of all, that's a jurisdiction. No, it wasn't recessed. It was off the floor. It wasn't below the floor. It was recessed in from the line of the aisle that she was walking on. It would be like if she was – Oh, I understand. I'm sorry. I misunderstood you. I understand, sir. Right. So – Well, even though it was recessed, wasn't it open and obvious? Not from her angle of approach, no. And we've presented some illustrative photographs. If she was looking, would she have seen it? If she was looking directly at it. But when people shop in stores, it's the goal of the merchant to divert people's attention to the merchandise. Yes, but still, if you're walking – if you're walking, shouldn't you look where you're walking? Well, she was looking where she was walking, at least generally speaking. If you're always walking down, then you'll never see anything that's in the store. But again – I'll tell you the truth. I'm more concerned about the expert disclosure problem. If Judge Collins' question was answered. Let me ask you this. Tell me where I'm missing the boat here. Okay. General rule, you don't have to give expert disclosure reports of the treating doctors. That is the majority rule in the Fifth, Sixth, and Tenth Circuits. No other circuit has addressed the issue. That's what the clear language of Rule 26a to b says. And that's because what they do while they're treating, they're almost like recipient witnesses. They're fact witnesses. They're fact witnesses, exactly. Now, what makes your case a little different is your doctors were not going to testify only to the treatment that they gave her, which strikes me as absolutely admissible. But then you went further and gave them, after the treatment ended, other material that they were to look at to opine on whether her neck condition that developed sometime later was related to the fall. That's generally true, but let me clarify that. That's where Judge Teelburg had a problem. He said, fine, the doctors can testify to what they did, what opinions they have based on their treatment, but when you then gave them other stuff to look at that wasn't within the course of their treatment, then you made them this super-duper expert and you had to then comply with the other disclosure rules. Well, I'm not sure that that wasn't really the basis of Judge Teelburg's decision. Judge Teelburg based his decision on the fact that once treating physicians offer opinions as to causation, that they are magically transformed into the type of witnesses that which reports are required. No, no. I mean, there's causation. There's causation. There's causation. Your lady had a preexisting condition that manifested itself sometime after the fall. She went back to California and got some other treatment. I mean, I didn't understand Judge Teelburg to say, you know, she can't, the doctors couldn't testify that if she fell and twisted her ankle, that would, you know, in the fall cause the twisted ankle, that was fine. He had no problem with that kind of thing. He drew no such distinction at all. Well, he said yes. He said they could testify to whatever is in their notes of the treatment. But what happened is, though, you then gave them additional information that was developed beyond the time of their treatment and asked them to opine about that. That's the problem he had. Yes. But again, the exclusion of the witnesses was totally contrary to the language of Rule 26a to b itself, and it's contrary to the cases that support the majority view, and it's contrary to the advisory. How is it contrary to the rule? I think it's right on the rule. How is it contrary to the rule? No, the rule itself says that when you make your disclosure of your witnesses, which was timely done, reports are required from expert witnesses. But it says, but only if the witness is retained or specifically employed to provide expert testimony, or if the witness is an employee of the party and the witness's duties regularly involve giving expert testimony. Now, these witnesses were not retained or specifically employed. I paid them not one cent and never spoke to them until after, shortly thereafter, when the defense supplied their reports, and then I retained those witnesses. I sent them records, and they then offered rebuttal expert reports as well as general type of medical reports. But the clear reading of the rule and the clear decisions of the Fifth, Sixth, and Tenth Courts, circuit courts say that treating physicians do not have to supply reports but can offer causation opinion. What injuries were you claiming here besides the neck? Anything else besides the neck? There were some emotional injuries, but her neck injuries that Ms. Goodman had had a spinal fusion in her neck. Right. About five or six weeks before the fall. When she fell, she had some minor injuries at the scene, including a – she fell on her head. She bumped her head. There was a bruise on her head. There were bruises on her feet. And the doctor treated those? Emergency room doctor. Okay. Yeah, and they didn't really offer any real treatment for those. But then Ms. Goodman, almost immediately within days, and even complained of the same type of symptoms that she had that caused her to have the spinal fusion surgery. And her surgeon opined that the fall caused the spinal fusion material, the material that's put in. Which doctor was that? It was Dr. Landman. Dr. what? Landman. Was he excluded by Judge Taylor? They were all excluded. Why was he excluded? Because he didn't submit a report. Because I – let me make this clear. We identified Dr. Landman and all the other doctors timely. We provided summaries of what they were testified to. Ms. Goodman was deposed. She specifically testified that what these doctors were going to testify to because this is what they told her. I knew this because Ms. Goodman had told me this as her attorney. And Landman was the surgeon in California? Yes. And he was going to testify that the fall exacerbated the neck? Caused her fusion to fail and had to be repeated. You acknowledge, though, that the testimony of the expert or experts, to some extent, was to opine on causation beyond the actual treatment that they administered? Yes. And there are numerous cases that say that forming opinions, these are just part of their view. But to the extent that a physician testifies to injuries and hypotheses as to future problems, disabilities, beyond the scope of what he actually treated the patient for, to that extent, is not the treating physician no longer an expert witness, but rather – no longer a fact witness, but an expert witness? He's both. He's a fact witness to the extent of whatever he himself did and what he deduced is his diagnosis from whatever he did. But to the extent he opines on disabilities beyond what he himself treated and found, is he not then no longer a fact expert, but a retained expert? Yes. Well, when he was retained, that's when, according to the rule, we provided reports. They were never – they were never retained. At the time – I retained them to give rebuttal expert reports. The problem is that all I did was follow the clear language of Rule 26a to b and the clear language of the Court's own Rule 16 scheduling order. If the Court had wanted treating physicians who were going to provide expert opinions to submit reports, it would have been very easy for the district court to just put that in its pretrial order. But isn't it a given, beyond the treatment and the diagnosis that a treating doctor gives, isn't it the – isn't it a given that to that extent the treating doctor is no longer just a treating doctor? He is an expert beyond and holding forth on opinions beyond his actual treatment and original diagnosis. He's been described in United States Court of Appeals decisions as a high-bred witness. Mr. Klaffman, do you know whether Judge Teelborg's interpretation of Rule 26 is like commonly adopted in the district court in Arizona? There's been no knowledge of any such interpretation of this rule by anyone. So you never heard of this? No, absolutely not. Interpretation of the rule in the district court there until this case? Absolutely not. And in addition, if we can get into the issue of prejudice, the district court, sua sponte, extended Staples' deadlines for conducting discovery and making disclosures. And I think it's telling that the – well, I think the court did that to try to – and I was – I left court with the impression that, fine, everything's, you know, going to be – he's going to admit this evidence, and there's also evidence of nonmedical expert reports. But there was really no basis – reason for the court to extend Staples' disclosure and discovery deadlines without providing the type of relief that we're seeking here today. And then even after the trial judge extended Staples' deadlines, the evidence that there was no prejudice is clear from the fact that – that Staples offered absolutely no expert – other expert opinions except to add a neurologist as an expert witness. There was not a single opinion of any of Staples' experts that was changed. Yeah, but you don't know what they would have offered if you would have given expert testimony beyond the treating doctor's treatment and his immediate prognosis and diagnosis for that treatment. You don't know. Well, let me say this. I do know, because we provided medical reports. Well, yeah, but they don't – their position is they don't have to rely on what you say as expert. Rule 26 requires that it be in written form and the expert's words, because they would want to depose the expert. Yes, but it also goes on to say that the reports aren't required unless the witnesses retained or specifically employed. Your basic problem here, your basic argument, though, is that this is a new rule that was sprung on you that the bar was not aware of. So if you are correct that you had no reason to believe this and if it is law, you want a reversal to – this is the first instance this has ever been before the bar. You had no prior notice and, therefore, you want a reversal to – and you would then, I take it, supply the expert reports if we say that they're required under Rule 26. Yes. But actually, we did supply the expert reports. They were provided before the initial discovery deadline. The doctors were even deposed before the initial discovery deadline. And then the trial court extended the deadline for Staples to cure whatever prejudice Staples might have suffered. Yes. But as a defense lawyer, a defense lawyer would rely on a Rule 26 expert report going to trial knowing that he can't get hit with anything that's beyond the expert reports. I mean, any defense lawyer will tell you that. That's their mantra. That's mother's milk to a defense lawyer. If it's not in the expert report, they know there's nothing going to be testified to about it. But they got the expert report before the witnesses were deposed. They got the expert reports before the initial discovery cutoff. The judge extended their discovery cutoffs. They didn't change any opinions. So the point I'm trying to make here is that there was no prejudice. And not only was there no prejudice, the district court refused to even entertain the argument that there was no prejudice. I filed a pleading, I think it's docket number 81, where I listed about 30 different reasons why the defense was not prejudiced, and the district court just said missing a deadline is prejudice per se.  And the district court refused to even entertain the argument that there was no prejudice. So he made no findings. And because he made no findings, it's a denial. I just wanted to ask you real quickly, do I understand correctly that the people who treated her bruised foot or the scrapes and bruises she got when she fell, those were the ER doctors? Yes. Were they witnesses? Were they listed as witnesses? Yes. Okay. And they were? Just to the extent that, yes. And all the records and all the records and bills were all timely produced. Gotcha. Thank you. Can I just mention? No, you're out of time. Thank you, Mr. Connelly. Okay. Good afternoon. May it please the Court. Jeffrey Miller for Defendant in Appalee Staples, the office superstore. I would like to briefly, since it was raised, talk a little bit about the open and obvious condition ground for summary judgment to begin with. You know, I took a look at the court's order, and I saw something that caught my eye when I first read it. And I'm paraphrasing what the good judge said, but he said that, you know, people sustain injuries from all kinds of conceivable conditions, variety of circumstances. And since a proprietor or a landowner is not an insurer of the premises, sometimes the court has to draw a line. And I think that's exactly what the court did with this case. Well, doesn't the Arizona Supreme Court say whether something is open and obvious or not is generally a jury question? Is that what Justice Bales held in Gibson? Generally, it is a jury question, but where reasonable minds cannot differ, where the line has to be drawn, the judge has the power to do that. If I say I think it's not open and obvious, is that a difference of reasonable minds, so it should go back? Your Honor, it depends upon the state of the record and what we're facing here. What we have here is the picture. Well, we are looking at the picture, Your Honor, is an empty shell. If I look at the picture and I conclude, well, reasonable minds can differ, then is that a difference, sufficient difference of fact, so we should send it back? If the law is in Arizona, is that if the court's determined that reasonable minds can differ, then the defense holds. If it does not, then it does not. That's the law in Arizona. What we're providing here, Your Honor, is this was nothing more than an empty shelf. There was nothing defective about the shelf. Well, an empty shelf about two or three inches off the ground. That's the way these shelves are. All the shelves in the store were exactly the same. You go to any store. Okay. This shelf had no merchandise on it. That's correct. Okay. Well, her position is more or less it was kind of an optical illusion. You know, all the other stuff has merchandise. This one didn't have merchandise. And, you know, that's why she ---- Your Honor, with all due respect, I think we have to draw a line somewhere. Well, that's the jury. Why doesn't the jury draw that line under Gibson? Your Honor, because what we have here in a very, very succinct record is nothing about lighting. She supposedly was watching where she was going. There were no flooring issues. This was a normal shelving apparatus that you put items on. There was a person on it. Everything else has merchandise on it except this one. Sometimes you have to load them, Your Honor. Well, sometimes you do. It can't be at 100 percent of the time. Sometimes you put barriers around them so people don't bump into them. Well, we take common sense and we look at it. We say to ourselves reasonable minds cannot differ because there was nothing wrong with this shelf. Let me change the subject for a second. Yes. I'd like to ask you about why Dr. Landman was not able to testify. He was a treating doctor. Was he not? Dr. Landman was an assistant surgeon to the surgery prior. Right. So the answer is yes. He was a treating doctor. Yes, he was. Okay. Why was he not allowed to testify? For the all the same reasons as the other health care. Okay. But isn't he exempt from, as a treating doctor, from supplying a report? Well, he did supply a report, Your Honor. The issue was whether he was able to testify. They haven't explained why this treating doctor was not allowed to testify. He was allowed to testify under the court's order. The court's order was very specific, Your Honor. The court's order was inconsistent with the law that has developed on this issue. The court did not exclude any witnesses per se. It excluded the scope of what they could testify to in relation to violation of Rule 26. Did Judge Tilburg allow Dr. Landman to testify about the cause of the injury? No. Well, why not? Because he was not listed. It was in violation of Rule 26. What did his name was disclosed. Your Honor, the disclosure consisted of this sheet. Yes. Which consists of 35 different entities without saying one thing about what they're talking about. But this guy's a treating doctor. This doctor is a treating doctor, but he was being used, Your Honor. They don't have to do more than that, do they? Your Honor, the state of the law that I have seen reviewing these cases. I think they're asking direct questions and I'm not getting direct answers. My question to you is, do they have to do more than disclose the name of a treating doctor who's going to render an opinion about his treatment? Correct. If they're going to use the doctor to provide an opinion that is beyond the scope of the treatment they provided, they must comply with Rule 26. Right. Now, was Dr. Landman talking about the scope of his treatment? Dr. Landman, he was trying to what, what, what. Dr. Landman says I operated on her neck. Right. In my opinion, her problem with her neck was caused by her fall. He did not. All he testified to in his report was that he came, that she came to him and he treated the condition. He did not make an expressed opinion relating to the causal effect. They don't have to tell you. If he's a treating doctor, he doesn't have to give you that, does he? Well, I guess we're going around in circles. If I may, Your Honor, if I could just lay this law for you that I can, I think I can answer this question for you. What the judge did was follow what is not a majority or a minority view. What it is is a general consensus that has now developed over time. By the way, were you the lawyer in the district court? No, I'm the federal lawyer, Your Honor. You don't know what the practice is in Arizona, whether all the judges follow the same interpretation or not? I think the practice is consistent with the notion that the general rule is that there has to be teeth to the disclosure requirement. You don't know from practicing there what the other judges do in Arizona? The particular judges in that court I don't know, Your Honor. However, I do know the trend that you can see with the courts, saying that these. Well, my concern is whether, you know, Mr. Kauffman was, like, surprised that this was a, you know, novel and unusual interpretation that he never heard of before, which seems to be the case. Your Honor, I don't think, you know, I think that's one of his main arguments, that the law, he didn't know what the law was. But, you know, ignorance of the law is not an excuse as far as I know. No, no. He has a definite impression of the law. And he, you know, he says this conforms to the letter of Rule 26. Your Honor, let me say. This is a judicial gloss in some districts. I'm not. Let me provide to you two cases that we put in the brief. In fact, counsel. It's not a case unless it's an Arizona Ninth Circuit case. Otherwise, it doesn't do any good because he doesn't give notice of what happens in Arizona. So otherwise, it's not a case. Your Honor, there's a Ninth Circuit case, the Sullivan case, and the Wong case that say this, Your Honor, and I call it a rule of prudence. It basically, the rule is, Your Honor, that when we're looking at violations of Rule 26a to b, that Rule 37c1 provides for an automatic exclusion sanction. The general rule is that there is an exclusion sanction. Kennedy. It doesn't tell you anything about how Rule 26 is supposed to be interpreted. Excuse me? It doesn't tell you anything about how Rule 26 is supposed to be interpreted. Yeah, yeah. It just tells you the consequences of violating it. Your Honor, if I could just finish this thought on this. Why don't you answer Ted Sullivan's question? Let me ask it again. I'm not sure I made myself clear. She's treated by doctors in Phoenix, and then sometime later she's treated by doctors in California. I think I'm with you as far as the problem with the doctors in Phoenix. Let's assume for the sake of discussion. The doctors in Phoenix did whatever they did. And then after they did whatever they did, sometime later they were shown some other stuff and asked to opine about whether her subsequent injuries were caused by what happened to her in Phoenix. Okay. At that point, they're no longer exactly the treating doctor alone. They're also being used as an expert to prove causation. Okay. I think I got that. Then she goes to California and is treated by a doctor in California, this guy named Landman. He works on her neck and he opines that the cause of the problem in her neck was the fall she sustained in Phoenix. This guy's a treating physician. I don't understand why they have to do more than just say I'm going to call Dr. Landman under the way the rule is written. I don't think the scope of the record that we have here indicates that part of his treatment he opined that the cause was the fall. Well, you depose him and you find out. If he's a treating doctor and he's going to say I treated this injury and in my opinion this injury was caused by the fall, I don't understand why they have to do more than that. Because the law that has developed, Your Honor, is that we must look at when the opinion is formed. Is the opinion formed during the course of treatment or is the opinion formed after the course of treatment in relation to litigation? This individual you're talking about treated the individual, but he wasn't treating the individual relating to causation or anything related. He was just treating the individual. You don't think a doctor asks a patient how did you get this condition? There's no evidence, Your Honor, that he can't. He just shows up and says, okay, we're going to operate. We're not going to ask you how. Sure information is provided, but there's nothing in this record to say anything other than these physicians. Isn't that why they take a history? They take a history, but it's only based on what the person says. We're talking about a very serious ---- Isn't that the reason a history is taken to try to find the cause of the condition? I think the history is given, Your Honor, so that the treatment can be made. You have to know what you're treating. And the individual patient is in no position to know the ---- Something that helps you know the condition you're treating is to find out the cause. But we have no record of that, Your Honor. All we have is a patient who is being treated, and that patient was treated. And then later on, after the fact, we have an opinion that was supposedly provided by this doctor, but didn't comply with Rule 26. So ---- Is there anything in State law which says that ---- now, I know a pure expert. You go to an expert, never treats you, you just get a hypothesis as to what the cause ---- Is there anything under Rule 26 or any of the cases under State law or analyzing it which say that a treating physician has to give a Rule 26 report in order to opine as to the cause of an injury when he has treated the patient for effects of that injury? Yes. And those cases were thoroughly briefed in the case. That rule has developed, including the cases cited by counsel. You look at when was this opinion formed. And what we have in the State of this record was that there was no formation of any opinion on causation during the treatment. It was only done after the information was provided to counsel. And at that point, at that juncture, and it's very clear, these are what the cases are saying. At that point, now you need a report. Before, you don't need a report. If the guy is just treating the individual, you don't need a report. If you, however, want an opinion not part of treatment, now you need the disclosure of an opinion. And how does Rule 26 say that? I mean, I ---- specifically. Specifically, it's ---- Rule 26 basically says if you're providing, you know, some type of an opinion relating to the case that you must have the disclosure. What says if you're retained for that purpose? Excuse me, Your Honor? Rule 26 says if you're retained for that purpose. That is correct. And according to Mr. Coffman, these doctors weren't retained for that. Sure, maybe he asked them for an opinion, but they, you know, rendered it without extra charge or extra retention. Mr. Coffman said he was retained afterward, after the rebuttal. After the rebuttal. Retained for the lawsuit. But the point is, so was the treating doctor retained to testify. But the point is, the doctor is giving a report based on analysis and diagnosis which he formed, whether it's expert opinion or not. It is expert. But based on causation which emanated from the treatment that he gave, is he not? In other words, he's giving an opinion. He treats the – this is just not a retained expert. This is a treating expert who treats a patient and then says this treatment I'm giving is related to an automobile accident you had five years ago or whatever. Why would an expert report require such as that? Because the doctor is giving – opining that the treatment he's giving is related to something which occurred. This is the precise problem that the good judges face. What he decided to do was let's look at the medical records. If the medical records indicate there is something to show that this physician was looking at the causal connection between the treatment, the injury, and what occurred, what he was treating, if the records say that, we are going to say we don't need a report. But if they don't say that, and they don't care. They don't write everything down. I mean, they don't have time to write everything down as to – they're putting down essential things that they want in their medical records. But if they form that expert opinion at the time they treated the patient, why is that not testimony related and consequent upon being a treating physician? The problem with this record, Your Honor, is we don't have that tie-in that you're talking about. If it existed, I wouldn't disagree with you, but we don't have it. And the judge was faced with a situation of a clear, blatant violation of Rule 26, disclosures. It was really late. It was – I mean, we're talking about a situation where four and a half months after the time of the first treatment. Kennedy. Let's go with the merits of it, not the procedure. Right. Let's go with the merits of it. The – in other words, you know, the appellant's position is here, look, this was a treating doctor who was giving an expert report opinion based on what he believed, perhaps not exactly articulated at the time he was treating him, but what he believed at the time he treated the patient is the cause of the accident. Why isn't that the expert treating physician report not a pure expert report, someone retained as a higher gun to testify as to causation? There's very simply no evidence to indicate that the opinion on causation was created or done during the course of treatment. Well, that would be – that would be at the time he testified, he would say. And I must say, Your Honor, when we're looking at this, and we haven't talked about standard of review, but I think it's critical here. We have a de novo standard of review on the summary judgment, but not on the issue we're talking about here. We're talking about whether the Court abuses its discretion in excluding or limiting the testimony of this witness at a situation that occurred prior to that summary judgment. And I think based on what we know in this record, because there was nothing in the medical report to indicate a causal opinion at that time, the Court was well within its discretion to fashion the remedy. Well, I don't think it's an abuse of discretion standard. If it's – your position basically is if it's not in the medical report, the doctor can't say the first thing about it. He can say it, but he didn't provide any evidence. There was no declarations from anybody submitted at the summary judgment motion to indicate anything relating to the – to whether there were opinions formed. The record is silent. All we have is the medical records, and that's all the Court could use. Thank you very much, Mr. Coffman. You used up your time, so we will submit the case at this time. Thank you very much, gentlemen. Thank you. Thank you, Mr. Coffman. Nice to see you.
judges: Cowen, Tashima, Silverman